IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.                                                ) <br> ) <br> MATTHEW BELANGER                ) | 1:22-CR-00049-JAO-1 |

**DEFENDANT MATTHEW BELANGER'S MOTION FOR EARLY
TERMINATION OF SUPERVISED RELEASE**

Mr. MATTHEW BELANGER, pursuant to Federal Rule of Crim. P. 32.1(c) and 18 U.S.C. § 3564(c), respectfully requests that this Court grant him early termination of his supervised release, and in support states the following.

**I.  Relevant Procedural History**

On January 17, 2023, Mr. Belanger pleaded guilty to one count of conspiracy to make a false statement to a federal firearm licensee in violation of 18 U.S.C. §§ 371, 922(a)(6), 924(a)(2), and 924(a)(1 HA)(Count One); and one count of making a false material statement during purchase of a firearm in violation of 18 U.S.C. § § 922(a)(6), 924(a)(2), and 2 (Count Two). (Plea Agmnt., ECF No. 27.) On June 8, 2023, this Court sentenced Mr. Belanger to a time-served sentence of imprisonment and three years of supervised release. (J., ECF No. 40.)

**II.  Memorandum of Law and Argument**

18 U.S.C. § 3564(c) states that a Court may seek early termination of supervised release, "after considering the factors set forth in section 3553(a) to

1

the extent that they are applicable…at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." *See* 18 U.S.C. § 3564(c).

### A. 18 U.S.C. 3553(a)(1) Nature and Circumstance of Mr. Belanger

Mr. Belanger, while serving honorably in the U.S. Navy, wished to legally acquire a firearm in his home state of New York. Under New York law, trained professionals in law enforcement (i.e., members of the Navy or police officers) are permitted to purchase and carry firearms on their person. Mr. Belanger was not able to purchase his firearm while he was deployed in Pearl Harbor, Hawai'i, and thought nothing of asking a family member to purchase the firearm for him so he could have it upon his return.

Unbeknownst to Mr. Belanger at the time, this was a federal crime. Despite it being an oversight on Mr. Belanger's part, he pleaded guilty to the offense and accepted responsibility for his actions. He served roughly 12 months in federal custody and now strives to be a contributing member of society. During a preliminary investigation regarding the above offense, law enforcement found Mr. Belanger was friends with people in an extremist group. Without a complete investigation, the government filed a document accusing Mr. Belanger of purchasing the firearm to further the directives of this extremist group and accused him of being a part of their "in circle."

Mr. Belanger worked tirelessly with federal investigators to show that there was no evidence that he associated with or shared the hateful beliefs of the group other than the fact that he had at one time been friends with the people who directed it. By then, it was too late. News articles published about Mr. Belanger accusing him of being a violent extremist have ruined his reputation despite not being based on any evidence. In my view, Mr. Belanger has been unjustly punished in the court of public opinion.

Mr. Belanger now seeks to move on with his life. He has relocated to Florida to make a fresh start and is seeking employment. Due to the above misunderstanding, he is finding it difficult to find employment and fully integrate back into society.

### B.  18 U.S.C. 3553(a)(2)

#### 1.  Reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Mr. Belanger's sentence would still reflect the seriousness of his offense, promote respect for the law, and provide just punishment. Mr. Belanger's offense, though serious, is nonviolent. *See generally*, PSR. Mr. Belanger has already served a custodial sentence and a year of supervised release. J., ECF No. 40. This is Mr. Rapati's sole encounter with the law. *See* PSR. Finally, we can infer from the sentencing guidelines that custodial sentences are more "serious" than non-custodial sentences, according to the Sentencing Commission. As such, Mr.

Belanger has already served the most "serious" part of his sentence. Thus, terminating his supervised release will not take away from reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment.

**2. Afford adequate deterrence to criminal conduct.**

Empirically, criminologists have shown that harsher sentences do not deter the public from committing crimes; rather, the certainty of getting caught has a greater general deterrent effect. The fact that Mr. Belanger was arrested and pleaded guilty will be the most deterrent factor of this case to prospective criminals—not the length or severity of his sentence. *See* Charles E. Loeffler & Daniel S. Nagin, The Impact of Incarceration on Recidivism, 5 Ann. Rev. of Crim. 133–152 (2022). Therefore, terminating his supervised release will still serve the purposes of general deterrence because the aspect of the case relevant to general deterrence has already occurred.

**3. Protect the public from further crimes of the defendant.**

Mr. Belanger does not fit the profile of a career offender. Extensive criminological research has shown strong family support to be a predictor of desistance from crime for defendants upon release, alongside stable work, transformation of identity, and aging. *See* Thomas J. Mowen, *et al.*, Family Matters: Moving Beyond "If" Family Support Matters to "Why" Family Support Matters during Reentry from Prison, 56(4) J. of Rsch. In Crime and Delinq. 483;

4

*see also* John H. Laub & Robert J. Sampson, Understanding Desistance from Crime, 28 Crime and Justice, 1 (2001).

Based on the available research, Mr. Belanger fits the demographic of someone who will not re-offend, as he has strong family ties, consistently seeks employment, and has undergone an identity shift. Mowen, *Id*. First, Mr. Balenger enjoys being around his family and has supportive parents as well as an aunt and uncle who are supporting him while he looks for employment.

Additionally, Mr. Belanger has applied to approximately fifty jobs during his supervised release period, including jobs in retail, pool cleaning, car washes, librarian assistant positions, and janitorial positions. Thus far, he has been unsuccessful. It is a strong possibility that being on supervised release is limiting Mr. Balenger's employment opportunities due to the reputation it gives him. Mr. Balenger has a deep desire to be employed and might have more success if his supervised release is terminated.

Also, Mr. Belanger is contemplating furthering his education at some point. However, due to his removal from the military, he lost his education benefits and is unsure how he will finance it with his current financial situation. Mr. Belanger is a hard-working person but is not academically inclined, so he would like to be in a position where he can go to school full-time to focus on his studies. Since he would not be working while in school, Mr. Balenger would

need to wait until after is supervised release ends as employment is one of the requirements of his release.

Finally, Mr. Belanger has undergone an identity shift. Despite not being required to, he participates in regular therapy sessions to help him transition into his new life. He takes prescription medication to improve his mental health. Mr. Belanger is not the same person who committed the offense in question and will not commit any future crimes. Terminating his supervised release will not endanger the public.

4. **Provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

As stated above, Mr. Belanger has adjusted wonderfully to life post-conviction. He is engaged with work, and family, and attends therapy. He has complied with all aspects of his supervised release. There is no need for further correctional treatment, as Mr. Belanger has exhibited the behaviors of a model citizen.

### III. Opposing Party's Position

The Government is opposed to the instant request.

Middle District of Florida Probation Officer Rita Ramos will provide her position directly to the sentencing judge upon request.

### IV. Conclusion

Based on the foregoing argument, Mr. Belanger respectfully requests that this Court terminate his supervised release.

Date:		September 30, 2024

>	Respectfully submitted,
>
>	*<u>s/Katryna Lyn Spearman</u>*
>	Katryna Lyn Spearman, Esq.
>	Ga. Bar # 616038
>	kspearman@lowtherwalker.com
>
>	Lowther | Walker LLC
>	101 Marietta St. NW, Ste. 3650
>	Atlanta, GA 30303
>	404.496.4052
>	www.lowtherwalker.com
>
>	Attorney for Defendant
>	Matthew Belanger

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:22-CR-00049-JAO-1 |
| | ) | |
| MATTHEW BELANGER | ) | |

### CERTIFICATE OF SERVICE

I certify that on September 30, 2024, I electronically filed the foregoing MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE with the Clerk of the United States District Court for the District of Hawaii by way of the CM/ECF system, which automatically will serve this document on the attorneys of record for the parties in this case by electronic mail.

Date: September 30, 2024

Respectfully submitted,

*s/Katryna Lyn Spearman*
Katryna Lyn Spearman, Esq.
Ga. Bar # 616038
kspearman@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St. NW, Ste. 3650
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com